**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------X
SHERI KAMIEL,                                                                          Case No.: _____

                              Plaintiff,                         **COMPLAINT**

                -against-                                         **PLAINTIFF DEMANDS**
                                                                       **A TRIAL BY JURY**
HAI STREET KITCHEN CO., SAKURA DINING
CORPORATION, SUN JOON KIM and DAISUKE
KAWAUCHI *individually*,
                              Defendants.
---------------------------------------------------------------------------X

        Plaintiff, Sheri Kamiel, by her attorney, The Rose Law Group PLLC, hereby brings this action against the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990 ("ADA"), the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL"), seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against** and **retaliated against** on the basis of her **disability**, perceived disability and protected activities by the Defendant.

2. Plaintiff also complains pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for failure to pay the minimum wage and an overtime premium for hours Plaintiff was required to perform work and actually performed work duties. Plaintiff seeks to recover unpaid back wages, the overtime premium, and an additional amount as liquidated damages, reasonable attorneys' fees and costs.

### JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C.

§216(b)) as well as 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. §201 et seq., and 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the claims of Plaintiff brought under common and New York City law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district based upon Defendant being within the city of New York and existing within the Southern District of New York. 28 U.S.C. §1391(b).

5. Plaintiff filed a claim in the EEOC and received her Right to Sue letter. This action is being initiated within ninety (90) days of the issuance of her right to sue letter.

## PARTIES

6. That at all times relevant hereto, Plaintiff Sheri Kamiel ("Kamiel") was a resident of the State of New York and Bronx County.

7. That at all times relevant hereto, Defendant Hai Street Kitchen and Co. ("Hai Street") is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York and authorized to do business within the State of New York.

8. That at all times relevant hereto, Defendant Sakura Dining Corporation ("Sakura Dining") is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York and authorized to do business within the State of New York.

9. That at all times relevant hereto, Defendant Daisuke Kawauchi ("Dai") was President of Defendant Hai Street Kitchen and Co. and Sakura Dining Corporation.

10. At all times relevant hereto, Defendant Dai directly supervised Plaintiff Kamiel and had authority to terminate her employment.

11. That at all times relevant hereto, Defendant Sun Joon Kim ("Kim") was the Vice President of Defendant Hai Street Kitchen and Co. and Sakura Dining Corporation.

12. That at all times relevant hereto, Defendant Kim was Plaintiff Kamiel's direct supervisor and

manager.

13. Defendant Sakura Dining is the parent company of Defendant Hai Street and together, with the other companies owned and operated by Defendant Sakura Dining, was a joint employer and/or a single enterprise.

14. Defendant Sakura Dining, Defendant Hai Street, Defendant Kim and Defendant Dai are at times collectively referenced as "Defendants".

15. That at all times relevant hereto, Plaintiff Kamiel was an employee of Defendants.

## MATERIAL FACTS

16. On or about October 7, 2017, Plaintiff Kamiel was hired by the District Manager of the Defendants, after a month of a series of interviews. Plaintiff was scheduled to begin on October 9, 2017.

17. On October 9, 2017, Plaintiff Kamiel was sent to Philadelphia, PA for training. In Philadelphia, Defendants provided very little real training for her new position.

18. On October 15, 2017, Plaintiff Kamiel began working for Defendants at the Westchester Mall. The restaurant was being built at the time and Plaintiff Kamiel helped with final touches to get it up and running.

19. From the beginning of her employment with Defendants until the end of her employment, Plaintiff Kamiel was only paid for some of the hours she worked.

20. Defendant Kim instructed Plaintiff Kamiel that she could not get paid for more than forty (40) hours a week when business did not justify it.

21. For the first five months of her employment she was not compensated for approximately two (2) to four (4) hours each week which was spent traveling to and from Costco to purchase supplies used in the restaurant. This ended when the Human Resources employee for Defendants informed her that she had to be paid for that time.

22. Plaintiff Kamiel asked Defendant Kim if she could get paid for traveling to and from Costco and he said that she could clock in for that trip.

23. From the beginning of her employment until the end she was not paid for approximately two (2) hours of work each week which was spent creating and modifying schedules at her home.

24. When Plaintiff Kamiel asked if she could get paid for the work which she could not accomplish in the hours she was scheduled to work, Defendant Kim told her to "just get it done."

25. Defendants were fully aware that Plaintiff Kamiel was performing work off of the clock and without compensation. Plaintiff Kamiel directly informed Defendant Kim that she would have to do some work from home and he agreed, knowing that she could not clock in to work that time.

26. Defendants benefited from Plaintiff Kamiel's off the clock work and did not compensate her for that time or take action to ensure that she would be paid for that time.

27. On October 23, 2017, Defendant Hai Street Kitchen was officially open for business in Westchester mall.

28. In or around November 2017, Tyler Ward, District Manager of the Defendants, did not come to the restaurant at all.

29. On Black Friday of 2017, Plaintiff Kamiel worked the busiest day of the year by herself with brand new team members.

30. In or around December 2017, Tyler Ward left the company and Plaintiff Kamiel was left with little to no help from upper management. Plaintiff Kamiel had to teach herself store procedures and inventory for the company. Plaintiff Kamiel only saw the Vice President for the Defendants, Patrick Hughes, once a week (if at all) to go over any questions she had for a short period of time.

31. In or around the end of April 2018, Patrick Hughes left the company as well.

32. In or around April 2018, Plaintiff Kamiel advised both Defendant Kim and Dai that the Apple store inside the mall, which is one of the mall's main drivers, would be closing for six (6) months in four (4) weeks. The two of them dismissed Plaintiff Kamiel as if that was not going to affect the restaurant's sales.

33. Plaintiff Kamiel advised Defendants that the company was experiencing a drop in sales due to the temporary closure of the Apple store.

34. In or around the end of April 2018, Defendants' Shift Leader, came to Plaintiff Kamiel with a sexual harassment allegation against the Kitchen Manager. Plaintiff Kamiel immediately reported the allegation to the Human Resources agent. After little to no investigation, the allegation was dismissed. In fact, Kelvin asked for a raise shortly after the allegation and was granted the pay raise with no hesitation from Defendants.

35. Shortly after this, Defendants behavior grew unapproachable and hostile.

36. In or around May 2018, Plaintiff Kamiel informed Defendant Kim verbally of a surgery she would be getting in the near future.

37. On or about August 22, 2018, Plaintiff Kamiel visited her doctor where she received the clearance for her to undergo surgery for a hysterectomy due to the existence of large fibroids.

38. This diagnosis constitutes a disability under the law as the fibroids were a physical impairment that limited her major life function of reproduction and the entire reproduction system. They also limited her digestive and circulatory systems.

39. In or on about August 27, 2018, Plaintiff Kamiel informed Defendant Kim that her surgery was scheduled for October 1, 2018.

40. Plaintiff Kamiel advised him that it was a six (6) to eight (8) week recovery period and that she would be fully recovered and cleared to work on Black Friday (the busiest day of the

year). She advised him that she intended to only take a four (4) week recovery period if her doctor clears her but would not be able to lift or bend. However, she would be able to do ordering and inventory.

41. This plan, approved by Defendants, constituted a reasonable accommodation for Plaintiff Kamiel's disability.

42. Defendant Kim verbally agreed to this plan.

43. Defendant Kim visited the store every week on either Thursday or Friday. Plaintiff Kamiel and Defendant Kim discussed her upcoming surgery every time he came in and he assigned her to train a new employee, Ada, to take over in her absence.

44. In or around September 2018, Mr. Onoda, a co-owner of the corporate Defendants, was in from Japan to visit the restaurant. Plaintiff Kamiel and Mr. Onoda did not speak much during his visit but wished her a speedy recovery post-surgery before he left, indicating that Defendants were fully aware of the scheduled leave.

45. On or about September 11 2018, Plaintiff Kamiel sent an email officially requesting time off for her surgery per the companies policy and procedure. Plaintiff Kamiel saved up her sick days and vacation time to use as part of her accommodation. Defendant Dai wished the Plaintiff a speedy recovery and advised her to fill out a form.

46. On or about September 13 2018, Plaintiff Kamiel submitted her form requesting time off as a reasonable accommodation for her disability.

47. On or about September 21 2018, Defendant Kim was doing his routine restaurant visit when he advised Plaintiff Kamiel that she was scheduled to work too many hours on the next schedule and to take a day off.

48. Plaintiff Kamiel informed Defendant Kim that she would take Tuesday, September 25, 2018 off due to a high priority doctor's appointment she had that day. Defendant Kim immediately

6

agreed.

49. On or about September 25 2018, in route to her doctor's appointment, Plaintiff Kamiel received threatening emails from Defendant Kim and Defendant Dai regarding her schedule. Defendant Kim stated in an email to Plaintiff, "If you don't fix the schedule by end of day, you didn't want your job."

50. Upon information and belief, this threat was due to Plaintiff Kamiel's impending disability leave and was part of a plan to create a pretextual reason to terminate her employment prior to the leave of absence.

51. Defendant Dai followed up by threatening Plaintiff Kamiel's job, claiming that if she did not do this work for which she was not being compensated that she would lose her job.

52. Plaintiff Kamiel immediately stopped what she was doing, changed the schedule, and advised Defendant Kim that the schedule had been altered to meet his specifications.

53. Despite being an hourly employee, Plaintiff Kamiel took time out of her day off to fix the schedule due to Defendant Kim's ultimatum. She was not compensated for this work.

54. On or about September 27 2018, Defendant Kim came into the restaurant for his weekly visit. He reprimanded and yelled at Plaintiff Kamiel about the schedule and drop in sales. Plaintiff Kamiel, once again, explained to him that due to the temporary closure of the Apple store inside the mall, there was not as much traffic as there was prior to the closure.

55. Other shop owners and restaurant owners in the mall were complaining of the drastic drop in sales.

56. Upon information and belief, this reaction had nothing to do with Plaintiff Kamiel's qualifications or work product and only related to her disability accommodation.

57. On or about September 29 2018, Plaintiff Kamiel was scheduled for an 11am-10pm shift. At or around 5:15pm, Defendant Kim came into the restaurant. Defendant Kim was very hostile

and informed one of the Plaintiff's employees that she was being sent home early. At or around 8:15pm, Plaintiff Kamiel asked Defendant Kim if he would be sending her home. Defendant Kim confirmed that she would be sent home soon but wanted to speak to her in the kitchen first.

58. Defendant Kim brought Plaintiff Kamiel to the kitchen to speak to her, then told her he would like to speak to her in the food court. Defendant Kim proceeded to say to Plaintiff Kamiel, "As you can tell by now we have to let you go, you will be better somewhere else."

59. This was the day prior to the start of Plaintiff Kamiel's disability leave.

60. Defendants made this decision solely on account of Plaintiff Kamiel's disability and requested disability leave.

61. Plaintiff Kamiel asked Defendant Kim for her Cobra papers as she was undergoing significant surgery in twenty-four (24) hours and wanted to ensure that her health insurance continued. Plaintiff Kamiel gave Defendant Kim her personal email address for him to send her the papers.

62. On October 11, 2018, Plaintiff Kamiel emailed Defendants about when she would be receiving her vacation pay. Plaintiff Kamiel did not receive a response from the Defendants.

63. On October 13th, 2018, Plaintiff Kamiel emailed Defendants for a second time about when she would be receiving her vacation pay. Plaintiff Kamiel did not receive a response from the Defendants.

64. On October 15, 2018, Plaintiff Kamiel emailed Defendants for a third time about when she would be receiving her vacation pay. Plaintiff Kamiel did not receive a response from the Defendants.

65. Plaintiff Kamiel never received her vacation pay despite being told by Defendant Kim that she would receive it.

66. Plainttiff Kamiel had no further contact with the Defendants after inquiring about her vacation pay.

67. Defendants were aware that their acts were violations of the law requiring Defendants to pay a minimum wage for all hours worked, an overtime premium for hours worked over forty, and for accrued but unpaid vacation time.

68. Defendants violated the FLSA and NYLL by not properly compensating Plaintiff Kamiel. These violations were willful.

69. Plaintiff Kamiel was terminated due to her disability and/or in retaliation for her requesting reasonable accommodation. Defendants' decision to terminate her employment came the day before her disability leave was to begin and there is no non-discriminatory reason for terminating her employment.

70. As a result of the acts and conduct complained of herein, Plaintiff Kamiel has suffered a loss of income, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION AND RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**

72. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

73. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

74. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

75. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability and/or perceived disability.

76. Further, Section 12203 states that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

77. Defendant retaliated against Plaintiff due to her protected activities as stated herein.

78. As such Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

80. The Administrative Code of City of New York §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the **actual or perceived** age, race, creed, color, national origin, gender, **disability,** marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

81. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff because of her disability and/or perceived disability.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

83. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

84. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's requested disability accommodation.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

86. The New York City Administrative Code §8-107(19) states that it shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

87. Defendant violated the section cited herein as set forth.

### AS A FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW

11

88. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

89. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

90. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disabilities and perceived disabilities.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

91. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

92. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

93. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because she requested reasonable accommodation.

## AS A SEVENTH CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

94. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

95. Defendants willfully employed Plaintiff in the afore-mentioned enterprise and failed to compensate Plaintiff for all hours worked during her employment.

96. Upon information and belief, Defendants do more than $500,000.00 in business each year and handle goods which have moved in interstate commerce.

97. Defendants failed to pay the legally mandated minimum wage and overtime premium for all hours worked by Plaintiff and for hours worked over forty (40).

98. Defendants' willful failure to comply with the FLSA caused Plaintiffs to suffer loss of wages and Defendants are liable for liquidated damages as well.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW (minimum wage and overtime)

99. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

100. Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.; Article 6 & 9 of the NYLL; 12 NYCRR § 142-2.4).

101. Defendants failed to pay Plaintiff the minimum wage and overtime premium for certain hours when Plaintiff was required to be at work, ready to work, and actually performing the work.

102. Defendants' failure to comply with the New York Labor Law minimum wage and overtime protections caused Plaintiff to suffer loss of wages and interest thereon.

103. This includes the failure to pay an additional hour of pay for every day wherein Plaintiff were required to work in excess of ten (10) hours, known as "spread of hours" pay.

104. Defendants' violations were willful.

105. Defendants failed to pay minimum wage, overtime, and spread of hours pay as is required by the New York Labor Law.

106. On account of such willful violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

## **JURY DEMAND**

107.   Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the ADA, NYCHRL and NYSHRL by discriminating against and retaliating against Plaintiff on the basis of her disability and/or perceived disability and requested accommodation;

B. Awarding all wages not paid as required under the FLSA and NYLL, plus liquidated damages under the FLSA and the NYLL and interest;

C. Declaring that Defendants' policies and procedures violate the ADA, NYCHRL, NYSHRL, FLSA and the NYLL;

D. Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendant's unlawful termination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated:  Astoria, New York
        June 6, 2019

                                                          /s/Jesse C. Rose
                                                  Jesse C. Rose
                                                  The Rose Law Group PLLC
                                                  3109 Newtown Avenue
                                                  Suite 309
                                                  Astoria, New York 11102
                                                  (718)989-1864