UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Sheri Kamiel,

                                        Plaintiff,

                    -against-

Hai Street Kitchen & Co. LLC, et al.,

                                        Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/17/2020
```

1:19-cv-05336 (PAE) (SDA)

<u>REPORT AND RECOMMENDATION</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE:**

On December 3, 2019, the Court granted the motion of Plaintiff Sheri Kamiel ("Plaintiff" or "Kamiel") for a default judgment in this action. (Default Judgment, ECF No. 38.) The Court ordered that Plaintiff have judgment against Defendants Hai Street Kitchen & Co. LLC ("Hai Street"), Sakura Dining Corporation ("Sakura"), Sun Joon Kim ("Kim") and Daisuke Kawauchi ("Kawauchi") (collectively, the "Defendants"), jointly and severally, on all claims brought under the New York State Human Rights Law ("NYSHRL"), the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") in an amount to be determined at an inquest, plus costs, interest and attorneys' fees; and that Plaintiff have judgment against Hai Street and Sakura on all claims brought under the Americans with Disabilities Act ("ADA") in an amount to be determined at an inquest, plus costs, interest and attorneys' fees. (*See id*.)

By separate Order, this action was referred to me for an inquest into damages. (Order of Reference, ECF No. 39.) For the reasons set forth below, I recommend that the Court enter judgment against Defendants as set forth in the Conclusion below.

**BACKGROUND**

I.     **Established Facts As A Result Of Defendants' Default[1]**

Hai Street is a foreign business corporation authorized to do business in the State of New York. (Am. Compl., ECF No. 5, ¶ 7.) Sakura, which also is a foreign business corporation authorized to do business in the State of New York, is the parent company of Hai Street and together, with the other companies owned and operated by Sakura, was a joint employer and/or a single enterprise. (*Id*. ¶¶ 8, 13.) Kawuchi was President of Hai Street and Sakura and supervised Kamiel. (*Id*. ¶¶ 9-10.) Kim was Vice President of Hai Street and Sakura and also supervised Kamiel. (*Id*. ¶¶ 11-12.)

Kamiel was employed by Defendants from October 7, 2017 until September 29, 2018. (Kamiel Aff., ECF No. 41-1, ¶¶ 1, 26.) During her employment she was paid $19.50 per hour. (*Id*. ¶ 7.) For the first five months of Kamiel's employment she was not compensated for approximately three hours each week which was spent traveling to and from Costco to purchase supplies used in the restaurant. (*See id.* ¶¶ 8-10.) In addition, during the period of her employment, Kamiel performed approximately two hours of work each week from home creating and modifying schedules for Defendants. (*See id*. ¶ 13.) Defendants were aware of the additional hours of work done by Kamiel for which she was not paid. (*See id*. ¶¶ 12, 15.)

In August 2018, Kamiel learned from her doctor that she needed to undergo a complete hysterectomy due to large fibroids in her reproductive system. (Kamiel Aff. ¶ 16.) On or about August 27, 2018, she informed Kim that she needed to have this surgery and that her doctor had scheduled it for October 1, 2018. (*See id*. ¶ 20; Am. Compl ¶ 39.) Kamiel advised Kim that

---

[1] In light of Defendants' default, the Court is required to accept all of Plaintiffs' allegations as true, except for those pertaining to damages. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

there "was a six (6) to eight (8) week recovery period and that she would be fully recovered and cleared to work on Black Friday (the busiest day of the year)." (Kamiel Aff. ¶ 21; Am. Compl. ¶ 40.) She further advised him that she intended to only take a four (4) week recovery period if her doctor cleared her, but would not be able to lift or bend. (Kamiel Aff. ¶ 21; Am. Compl. ¶ 40.) Kamiel's plan was approved and agreed to by Defendants. (*See* Am. Compl. ¶¶ 41-42.)

In or about September 2018, Kamiel requested time off for her surgery in writing per company policy. (*See* Kamiel Aff. ¶ 23; Am. Compl ¶¶ 45-46.) During the week leading up to her termination, Kim began asking hostile questions to Kamiel. (*See* Kamiel Aff. ¶ 24.) On or about September 25, 2018, while on the way to a doctor's appointment, Kamiel received threatening emails from Kim and Kawuchi regarding her schedule. (Kamiel Aff. ¶ 25; Am. Compl ¶¶ 49, 51.) On or about September 27, 2018, Kim reprimanded and yelled at Kamiel about her schedule and a drop in sales. (Am. Compl ¶ 54.) On September 29, 2018, the day before her disability leave was to start, Kim terminated Kamiel. (*See* Kamiel Aff. ¶¶ 26-27; Am. Compl. ¶¶ 57-59.)

Kamiel remained unemployed for approximately 20 weeks after her termination. (Kamiel Aff. ¶ 30.) The job she obtained was for $16 per hour, rather than the $19.50 per hour that Defendants had paid her. (*Id*. ¶ 31.) In addition, in her new job, Kamiel's hours varied between 25 to 40 hours per week. (*See id*.)

Kamiel claims to "have suffered significant emotional damages" as a result of her termination. (Kamiel Aff. ¶ 33.) She states that she lost sleep, suffered from headaches and anxiety and cried frequently. (*See id*. ¶¶ 33-34.)

II.     **Procedural History**

Plaintiff commenced this action by filing a Complaint on June 6, 2019. (*See* Compl., ECF No. 1.) An Amended Complaint was filed against Defendants on June 18, 2019, asserting disability discrimination and wage-related claims. (*See* Am. Compl.) Defendants Kim and Kawauchi were served with a summons and the Amended Complaint on June 27, 2019, Defendant Hai Street was served on July 8, 2019 and Defendant Sakura was served on September 30, 2019. (*See* Affs. of Service, ECF Nos. 13-15, 26.)

After Defendants failed to appear, Plaintiff obtained Clerk's Certificates of Default against Defendants on August 21, 2019 and October 23, 2019. (Certs. of Default, ECF Nos. 20, 31.) Plaintiff filed a motion for default judgment on October 30, 2019.[2] (Second Mot. for Default Judgment, ECF No. 32.) As set forth earlier in this Report and Recommendation, on December 3, 2019, Judge Engelmayer ordered that Plaintiff have judgment against Defendants Hai Street, Sakura, Kim and Kawauchi, jointly and severally, on all claims brought under the NYSHRL, the FLSA and the NYLL in an amount to be determined at an inquest, plus costs, interest and attorneys' fees; and that Plaintiff have judgment against Hai Street and Sakura on all claims brought under the ADA in an amount to be determined at an inquest, plus costs, interest and attorneys' fees. (*See* Default Judgment.) Judge Engelmayer referred this action to me for an inquest into damages. (*See* Order of Reference.)

On December 3, 2019, I issued a scheduling order for submissions by Plaintiff and Defendants for the damages inquest. (*See* Scheduling Order, ECF No. 40.) On January 8, 2020, Plaintiff filed Proposed Findings of Fact and Conclusions of Law. (*See* Proposed Findings &

---

[2] This was the second motion for default judgment filed by Plaintiff since Plaintiff's counsel failed to appear for a hearing on the first motion for default judgment. (*See* 10/22/19 Order, ECF No. 28.)

Conclusions, ECF No. 41.) On January 10, 2020, as ordered by the Court, Plaintiff supplemented her Proposed Findings of Fact with a request for attorneys' fees. (*See* Rose Aff., ECF No. 43.) On January 16, 2020, Plaintiff's counsel caused all inquest-related documents to be served upon Defendants by first class mail. (*See* Aff. Service, ECF No. 44.) Defendants' response to Plaintiff's submissions was due on February 21, 2020 (*see* 1/9/20 Order, ECF No. 42), but no response has been filed by Defendants to date.

## <u>DISCUSSION</u>

Since a default judgment has been entered in Plaintiff's favor, the only remaining issue is the amount of damages to which she is entitled. Plaintiff bears the burden of establishing her entitlement to recovery and thus must substantiate her claims with evidence to prove the extent of her damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Although the Court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok*, 873 F.2d at 40). Here, I rely on Plaintiff's sworn affidavit, which contains the required evidentiary basis to determine whether the requested damages are reasonable.

I.      **FLSA And NYLL Claims**

A.      **Burden Of Proof For Wage-Related Claims**

An employee seeking to recover unpaid wages has the burden of proving that he performed work for which he was not properly compensated. *See Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-07777 (JGK) (JLC), 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012) (internal citation and quotations omitted). An employer is required to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c); *see also* 12 N.Y. Compilation Codes R. & Regs. ("NYCRR") § 142-2.6. However, absent such documentation, an employee may establish her right to recover unpaid wages by relying on her recollection alone. *Angamarca*, 2012 WL 3578781, at *3 (internal citation and quotations omitted). An affidavit that sets forth the number of hours worked is sufficient. *Id*.

Once an employee has presented her evidence, an employer may then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Angamarca*, 2012 WL 3578781, at *4 (internal citations and quotations omitted). "If the employer fails to do so, the court may enter judgment in the employee's favor, using her recollection to determine damages, even though the result be only approximate." *Id.* Because Defendants have defaulted, Plaintiff's representations as to the dates and hours she worked will be credited and her damages calculated on that basis.

### B.     Unpaid Overtime Wages

Under the FLSA, employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours in a week. 29 U.S.C. § 207(a)(1). New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 NYCRR § 142-2.2.

For the first five months of her employment, Plaintiff worked three overtime hours per week shopping for merchandise for Defendants for which she was not compensated. (*See* Kamiel Aff. ¶¶ 8-10.) For these hours, Plaintiff is owed $1,901 (*See id*. ¶ 11.) In addition, for the entire 51 weeks of her employment, Plaintiff worked two hours per week of overtime from home for which she was not compensated. (*See id*. ¶ 13.) For these hours, Plaintiff is owed $2,984. (*See id*. ¶ 14.) Thus, Plaintiff is owed a total of $4,885 in unpaid overtime wages.

### C.     Liquidated Damages

Although Plaintiffs would be entitled to liquidated damages under both the FLSA and the NYLL, the Court only grants liquidated damages under the NYLL, so as to avoid double recovery.[3] The NYLL entitles Plaintiffs to liquidated damages since Defendants' wage violations were "willful." NYLL §§ 198(1-a), 663(1). NYLL Section 663(1) provides that Plaintiffs are entitled to "liquidated damages equal to one hundred percent of the total of such underpayments found to be due." Plaintiff is entitled to liquidated damages on the total amounts of unpaid overtime wages under the NYLL in amounts equaling 100% of the total amounts due. Thus, the

---

[3] In *Chowdhury v. Hamza Express Food Corp*., 666 F. App'x 59 (2d Cir. 2016), a non-precedential panel opinion of the Second Circuit refused to permit an award of liquidated damages under both the FLSA and the NYLL for the same violation, because it would amount to "double recovery." *Id*. at 60-61. Plaintiffs are not seeking such a double recovery in this case.

Court finds that Plaintiff is entitled to liquidated damages under the NYLL in the amount of $4,885.

     **D.**    **Prejudgment Interest**

Plaintiff seeks pre-judgment interest on her NYLL claims for unpaid overtime. (Proposed Findings & Conclusions ¶ 15.) Plaintiff is entitled under New York law to pre-judgment interest at the statutory rate of 9% per year. *See* N.Y. C.P.L.R. §§ 5001, 5004. Pre-judgment interest applies only to the amount of compensatory damages and excludes the amount of liquidated damages. *See Angamarca*, 2012 WL 3578781, at *9 (internal citation omitted). Where unpaid wages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). I recommend that pre-judgment interest be calculated by multiplying the principal amount due under the NYLL by the interest rate by the time period—from a singular, midpoint date—up until and including the date judgment is entered. *See Angamarca*, 2012 WL 3578781, at *9 (internal citation omitted).

As set forth in Section I.B., *supra*, for the period October 7, 2017 to September 29, 2018, the unpaid overtime wages were $4,885. The midpoint between the two applicable dates is April 3, 2018. (*See* Proposed Findings & Conclusions ¶ 15.) Therefore, to calculate the prejudgment interest due, a 9% annual interest rate should be applied to $4,885 from April 3, 2018 through the date the judgment is entered.

## II.      ADA And NYSHRL Claims

### A.      Compensatory Damages

#### 1.      Economic Loss

"The ADA provides that a successful plaintiff shall have available the same remedies that would be available to a plaintiff pursuant to Title VII." *Rosso v. PI Mgmt. Assocs., L.L.C.*, No. 02-CV-01702, 2005 WL 3535060, at *15 (S.D.N.Y. Dec. 23, 2005) (citing 42 U.S.C. § 12117(a)). Therefore, back pay and front pay are available in disability discrimination cases. *See* 42 U.S.C. § 2000e-5(g); *Picinich v. United Parcel Serv.*, 318 F. App'x 34, 36 (2d Cir. 2009) (in case involving both ADA and NYSHRL claims, Second Circuit held that "[r]emedies available to the victims of discrimination are committed to the sound discretion of the district court") (citation omitted). The purpose of back pay is to make a plaintiff whole, that is, to "completely redress the economic injury the plaintiff has suffered as a result of discrimination." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (citation omitted). In general, a plaintiff in an employment discrimination case is entitled to back pay from the date of the discrimination (here, the day after Plaintiff's termination) through the date of judgment. *See Id.* at 144-45. "In deciding whether an award of front pay is appropriate, a court should consider (1) whether reinstatement [is] either impossible or impracticable (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation." *Shannon v. Fireman's Fund Ins. Co*., 136 F. Supp. 2d 225, 233 (S.D.N.Y. 2001) (citing *Whittlesey v. Union Carbide Corp*., 742 F.2d 724, 728-29 (2d Cir. 1984)).

Based upon Defendants' default, Plaintiff is entitled to both back pay and front pay. As to front pay, there is no speculation, as Plaintiff properly mitigated her damages by finding new

employment after 20 weeks, but it was at a lower salary. (Kamiel Aff. ¶ 31.) Thus, Plaintiff is entitled to recover the income she lost during the twenty-week period, *i.e.*, $15,600. (*See id.* ¶ 30.) She also is entitled to recover the damages she seeks for a two-year period thereafter in the amount of the income that she lost by having to work at a lower paying job, *i.e.*, $25,720. (*See id.* ¶ 31.) Given that the default judgment was not entered until December 2019, and the amount of the judgment has not yet been set, the bulk of the damages being awarded will be apportioned in the nature of back pay. Thus, front pay will be for a period of less than a year, which plainly is appropriate. *See Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 577 (S.D.N.Y. 2011) (awarding two years' front pay). Thus, I recommend that Plaintiff be awarded a total compensatory award for her ADA and NYSHRL claims in the amount of $41,320, which is the amount she seeks. (*See* Proposed Findings & Conclusions ¶ 21.)

Plaintiff also seeks prejudgment interest on her back pay. (*See* Proposed Findings & Conclusions ¶ 27.) "[F]ailing to award pre-judgment interest on back pay is ordinarily an abuse of discretion." *Small v. New York State Dep't of Corr. & Cmty. Supervision*, No. 12-CV-01236 (WMS), 2019 WL 1593923, at *21 (W.D.N.Y. Apr. 15, 2019). Because back pay can only be calculated when judgment is entered, and because judgment will not be entered in this case until after the District Judge considers this Report and Recommendation, it cannot now be known how much of Plaintiff's award will be attributable to back pay. Once the back-pay award is calculated, Plaintiff shall be entitled to prejudgment interest at the rate of 9%[4] on the back pay award. To calculate prejudgment interest, the back pay award should be divided *pro rata*

---

[4] Because Plaintiff is entitled to back pay under both New York law and federal law, I recommend that Plaintiff be awarded interest at the higher New York state rate. *See Small*, 2019 WL 1593923, at *21.

over the appropriate time period (*i.e.*, September 30, 2018, which is the day after termination, to the date that judgment is entered) and then the 9% interest rate should be applied. *See id*.

    **2.**    **Emotional Distress**

Plaintiff also seeks an award of emotional distress damages, which are available under the ADA and the NYSHRL. *See Sobel v. Cmty. Access, Inc.*, No. 03-CV-05642 (LAK) (MHD), 2007 WL 2076977, at *1 (S.D.N.Y. July 18, 2007); *Moore v. Houlihan's Rest., Inc.*, No. 07-CV-03129 (ENV) (RER), 2011 WL 2470023, at *4 (E.D.N.Y. May 10, 2011), *report and recommendation adopted,* 2011 WL 2462194 (E.D.N.Y. June 17, 2011). Such an award may be based solely on the plaintiff's testimony. *See Manson v. Friedberg*, No. 08-CV-03890 (RO), 2013 WL 2896971, at *7 (S.D.N.Y. June 13, 2013). However, the amount of emotional distress damages sought by Plaintiff, *i.e.*, $250,000 (*see* Kamiel Aff. ¶ 36), is excessive.

The Second Circuit sorts emotional distress claims into three categories: "garden-variety," "significant" and "egregious." *Rainone v. Potter*, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005) (citation omitted); *Caravantes v. 53rd Street Partners, LLC*, No. 09-CV-07821 (RPP), 2012 WL 3631276, at * 22 (S.D.N.Y. Aug. 23, 2012).

> In garden-variety claims, the evidence of emotional harm is limited to the plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. These claims typically lack extraordinary circumstances and are not supported by medical testimony. Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. Egregious emotional distress claims yield the highest awards and are warranted only where the employer's conduct was outrageous and shocking or affected the physical health of the plaintiff.

*Maher v. All. Mortg. Banking Corp.*, No. 06-CV-05073 (DRH) (ARL), 2010 WL 3516153, at *2 (E.D.N.Y. Aug. 9, 2010) (internal citations omitted). "'Garden variety' emotional distress claims

lacking extraordinary circumstances and without medical corroboration generally merit $5,000 to $35,000 awards." *Najnin v. Dollar Mountain, Inc.*, No. 14-CV-05758 (WHP), 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015) (citation omitted); *see also Drice v. My Merchant Servs., LLC*, No. 15-CV-00395 (MKB) (MDG), 2016 WL 1266866, at *7 (E.D.N.Y. Mar. 4, 2016) (same), *report and recommendation adopted*, 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016). "Important factors in assessing an appropriate amount to award for emotional suffering include 'the amount, duration, and consequences of the claimant's emotional distress.'" *Jowers v. DME Interactive Holdings Inc.*, No. 00-CV-04753 (LTS) (KNF), 2006 WL 1408671, at *12 (S.D.N.Y. May 22, 2016) (citation omitted).

Plaintiff's claim for emotional distress is supported by her affidavit, in which she attests that she has "been sleepless, suffered from headaches and anxiety," "cried frequently," and "often was unable to control [her] emotions." (*See* Kamiel Aff. ¶ 33.) Plaintiff also states that "[t]he anxiety from being terminated made [her] recovery more difficult . . . [and] contributed to [her] suffering from sepsis after the surgery." (*Id*. at ¶34.) However, Plaintiff fails to provide any medical records, and admits that she did not seek mental health treatment. (*See id*. ¶ 35.) Accordingly, her emotional distress claims and unsupported medical claims are "garden variety" claims. Other courts in this District have awarded emotional distress damages in the range of $15,000 based on similarly general testimony that discriminatory conduct caused the plaintiff "continued stress, anger, sadness and frustration," and that the plaintiff suffered from depression, panic attacks, headaches, nausea, loss of appetite, hives, and severe bouts of insomnia, even after her employment was terminated. *Jowers*, 2006 WL 1408671, at **3-4, 12 (collecting cases). I thus respectfully recommend that the District Judge award Plaintiff $15,000

in emotional distress damages. *See Drice*, 2016 WL 1266866, at *7 (awarding $20,000 for emotional distress based on plaintiff's testimony that she "felt then, and still continue[s] to feel offended, disturbed, and humiliated" and "suffered and continue[s] to suffer from severe anxiety and depression" due to defendant's sexual harassment within short period of employment); *Manson*, 2013 WL 2896971, at *6 (S.D.N.Y. June 13, 2013) (awarding $10,000 for emotional distress for plaintiff's vague and conclusory testimony that she "had low self-esteem, felt 'unworthy' and 'was having a difficult time feeling trust'").

### B.   Punitive Damages

As a final category of damages, Plaintiff seeks $50,000 in punitive damages. (*See* Kamiel Aff. ¶ 37.) "It is undisputed that the New York State Human Rights Law does not provide for punitive damages." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001). However, "it is well recognized that punitive damages are appropriate in an ADA case if the plaintiff demonstrates that her employer engaged in intentional discrimination with 'malice or with reckless indifference to the [plaintiff's] federally protected rights . . ..'" *Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236, 245 (W.D.N.Y. 2003) (citing 42 U.S.C. § 1981a(b)(1)). An entitlement to punitive damages requires a plaintiff to prove that her employer "intentionally acted with the knowledge that it may be acting 'in violation of the law, even if it did not know it was 'engaging in discrimination.'" *Tse v. UBS Fin. Servs., Inc.*, 568 F.Supp.2d 274, 309 (S.D.N.Y. 2008) (citing *Farias*, 259 F.3d at 101). Plaintiff asserts that "Defendants committed [their] violations [of law] with full knowledge that they were violating the law and fired [her] the day before her leave." (*See* Kamiel Aff. ¶ 37.)

13

The Court accepts Plaintiff's proof on this point, and would be inclined to award her the $50,000 in punitive damages that she seeks. However, the Court is faced with the limitations under the ADA that the sum of any emotional distress damages and punitive damages may not exceed $50,000 for employers with 101 or fewer employees. *See* 42 U.S.C. § 1981a(b)(3)(a). In light of the fact that Plaintiff does not allege in her submissions that either Hai Street or Sakura had as many as 101 employees, I deem it appropriate to limit the award of punitive damages under the ADA to $35,000, given my recommendation that plaintiff be awarded $15,000 in emotional distress damages.

### III.  Attorneys' Fees and Costs

Plaintiff is entitled to recover her attorneys' fees and costs under the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 198(1-a). In addition, under the ADA, "the court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Plaintiff seeks to recover $3,600 for nine hours billed to this case. (Rose Aff. ¶¶ 5, 21.)

#### A.  Reasonable Hourly Rate

District courts have broad discretion to determine a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289-90 (2d Cir. 2011) (internal quotation marks and citations omitted). The reasonable rate is ordinarily determined by "a case-specific inquiry into the prevailing market rates for counsel of similar

experience and skill to the fee applicant's counsel," which may include taking "judicial notice of the rates awarded in prior cases." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005).

Plaintiff is represented by Jesse Rose, who has his own law practice, The Rose Law Group, PLLC. (Rose Aff. ¶ 15.) Mr. Rose has been practicing law since 2009 and has extensive experience in litigating employment law cases. (*See id.* ¶¶ 8-13.) Plaintiff seeks reimbursement for Mr. Rose's work at a rate of $400.00 per hour. (*See* Rose Aff. Ex. A, ECF No. 43-1.) In 2015, District Judge Failla, in awarding attorneys' fees to Mr. Rose, reduced his hourly rate to $375. *See Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 519 (S.D.N.Y. 2015). However, Mr. Rose now has almost five additional years' of experience, including litigating many cases since 2015 in this District (*see* Rose Aff. Ex. B, ECF No. 43-2), such that the Court finds Mr. Rose's $400 hourly rate to be reasonable.

**B.**     **Reasonable Hours Expended**

Having determined the appropriate hourly billing rate for Mr. Rose, the Court next considers the hours expended. *See Angamarca*, 2012 WL 3578781, at *12. Mr. Rose only is seeking recovery for nine hours billed to this case. (Rose Aff. Ex. A.) The Court has examined contemporaneous time records "with a view to the value of the work product of the specific expenditures to the client's case." *See Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) (citation omitted). Based upon the Court's review, the Court finds that the hours billed are reasonable.

**C.**     **Costs**

Plaintiff did not make any submission regarding her costs, but the Court takes judicial notice of her filing fee in the amount of $400. Thus, the Court awards $400 in costs.

## CONCLUSION

For the foregoing reasons, I recommend that judgment be entered in Plaintiff's favor against all Defendants, jointly and severally, in the amount of $66,090,[5] and that judgment separately be entered against Defendants Hai Street and Sakura in the amount of $35,000,[6] along with prejudgment interest as set forth above. I further recommend that Plaintiff be awarded $4,000 in attorneys' fees and costs against all Defendants, jointly and severally. Finally, I recommend that Plaintiff be granted post-judgment interest on the full judgment amounts, pursuant to 28 U.S.C. § 1961.

DATED:        New York, New York
              March 17, 2020

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*              \*              \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party

---

[5] This amount consists of $4,885 in overtime wages, $4,885 in liquidated damages, $41,320 in economic loss as a result of disability discrimination and $15,000 in emotional distress damages.

[6] This is the amount of punitive damages, which (as set forth above) only are available under the ADA. Since pursuant to the Default Judgment, only Hai Street and Sakura are liable for the ADA claims, this amount only is awarded against them.

may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).