UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHERI KAMIEL,

Plaintiff,

-v-

HAI STREET KITCHEN & CO. LLC, SAKURA DINING
CORPORATION, SUN JOON KIM and DAISUKE
KAWAUCHI,

Defendants.

---

19 Civ. 5336 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On April 24, 2020, default judgment was entered against defendants in this case, jointly

and severally, for a total of $69,428.49; and an additional judgment was entered against

corporate defendants Hai Street Kitchen & Co. LLC ("Hai Street") and Sakura Dining

Corporation ("Sakura"), jointly and severally, for $35,000. Dkt. 49. In connection with the

default judgment, $153,561.86 was restrained from individual defendant Daisuke Kawauchi's

bank accounts, a portion of which has been collected. *See* Dkts. 52-9–52-11. Kawauchi, who

claims that those enforcement efforts first put him on notice of this lawsuit, now moves for

multiple types of relief: (1) vacatur of the default judgment; (2) an order mandating the return of

the funds collected from him; (3) an order lifting all restraints imposed upon his assets and

staying all enforcement efforts against him; and (4) dismissal of the case against him for want of

personal jurisdiction. In the alternative, should the case against Kawauchi proceed on the merits

but should the Court decline to order the return of the funds, Kawauchi seeks an order directing

plaintiff's counsel to hold the funds in escrow for the duration of the litigation.

For the reasons below, the Court (1) grants Kawauchi's motion to vacate the default judgment; (2) orders the funds collected from him to be returned; and (3) orders the restraints on Kawauchi's assets lifted and that all collection efforts cease and desist.  The Court also holds that plaintiff Sheri Kamiel's case against Kawauchi is to proceed on the merits, and grants her additional time to serve Kawauchi—albeit not via substitute service as she requests.  As such, the Court denies Kawauchi's motion to dismiss without prejudice.

## I.    Pertinent Factual and Procedural Background

On June 6, 2019, Kamiel brought this employment discrimination and labor law case against Kawauchi, Sun Joon Kim, Hai Street, and Sakura (which owned Hai Street).  Kawauchi is alleged to have been president of Hai Street and Sakura and, with Kim, Kamiel's supervisor.  Dkt. 5 ¶¶ 9–10.  On June 27, 2019, Kamiel attempted to serve Kawauchi by leaving the summons with an individual at 230 Park Ave., New York, New York 10169, the address for the food court within which Hai Street—along with other food vendors—had been located.  Dkt. 15; *see* Dkt. 70 Ex. A ("Kawauchi Depo."), at 18–19.  The recipient of service is identified as "'JANE DOE' MANAGING AGENT."  Dkt. 15.  The process server "[i]nquired as to [Kawauchi's] place of business and received a positive reply and confirmed the [230 Park Ave.] address of [Kawauchi]."  *Id.*  On June 28, 2019, the process server mailed process to the 230 Park Ave. address.  *Id.*  Neither Kawauchi—nor any other defendant—responded to the lawsuit.

On October 30, 2019, Kamiel moved for default judgment against defendants.  Dkt. 32.  On December 2, 2019, the Court held a default judgment hearing at which defendants did not appear.  On December 3, 2019, the Court entered default judgment as to liability against defendants and referred the case to Magistrate Judge Stewart Aaron for an inquest into damages.  Dkts. 38–39.  On March 17, 2020, Judge Aaron authored a Report and Recommendation

("Report") finding defendants jointly and severally liable for $69,428.49, exclusive of attorney's fees. Dkt. 47. No party objected to the Report. On April 20, 2020, the Court adopted the Report in full. Dkt. 48. On April 24, 2020, the Clerk of Court entered default judgment against all defendants. Dkt. 49.

In August 2020, Kawauchi moved from the east coast to Oregon. Dkt. 52-9 ¶ 10. On June 17, 2021, $153,561.86 was restrained from Kawauchi's Bank of America bank accounts, a portion of which appears to have been debited from those accounts that same day. *Id.* ¶ 12; *see* Dkt. 52-11 (bank statements showing debits for "Legal Order[s]"). On June 24, 2021, Kamiel filed—and the Clerk of Court approved—an abstract of judgment listing an Oregon address for Kawauchi. Dkt. 51.

On August 20, 2021, Kawauchi moved to vacate default judgment and dismiss the case against him, under Federal Rule of Civil Procedure 60(b)(4), on the ground that service was void, and therefore the Court lacked personal jurisdiction over him. Dkt. 53. Specifically, Kawauchi argued that he did not work for Sakura or Hai Street when Kamiel attempted to serve him at 230 Park Ave. on June 27, 2019. On August 25, 2021, Kamiel filed an opposition, arguing that service had been proper and, in the alternative, seeking (1) an extension of time to serve; (2) for authorization to effect substitute service on Kawauchi via process sent to his counsel's law firm; and (3) for Kawauchi to post a bond in the full amount the judgment pending resolution of the matter on the merits. Dkt. 56. On September 28, 2021, Kawauchi filed a reply. Dkt. 61.

On November 30, 2021, the Court directed the parties to arrange a plan for discovery as to the discrete issue of whether Kawauchi worked at Hai Street or Sakura as of the date of the attempted service, to be completed by December 23, 2021. Dkt. 62. On December 6, 2021, the Court approved the parties' proposed plan, Dkt. 63, and the parties then proceeded to discovery.

On January 11, 2022, the Court approved the parties' proposed schedule for the submission of additional briefing to supplement their letter motions, in light of the discovery they had taken. Dkt. 66. On January 25, 2022, Kawauchi submitted his supplemental letter, Dkt. 70; on February 8, 2022, Kamiel submitted her supplemental opposition letter, Dkt. 71; and on February 15, 2022, Kawauchi replied, Dkt. 72.

## II.    Vacatur of Default Judgment under Rule 60(b)

A default judgment against a defendant is void where the issuing court lacks personal jurisdiction over the defendant. *See "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 122–23 (2d Cir. 2008); *Vega v. Trinity Realty Corp.*, No. 14 Civ. 7417 (RJS), 2021 WL 738693, at *3 (S.D.N.Y. Feb. 24, 2021) (citing cases). Valid service of process is necessary for a court to exercise such jurisdiction. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Orix Fin. Servs. v. Phipps*, No. 91 Civ. 2523 (RPP), 2009 WL 2486012, at *2 (S.D.N.Y. Aug. 14, 2009) ("A court lacks *in personam* jurisdiction where a judgment has been 'obtained by defective service.'") (quoting *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103 (1987)). And where a default judgment is void because the Court lacked personal jurisdiction over the defaulting party, a court must vacate the judgment under Rule 60(b)(4). *See Vega*, 2021 WL 738693, at *4 (citing cases); *Orix Fin. Servs.*, 2009 WL 2486012, at *2 (same). Thus, the Court first reviews whether Kawauchi was validly served.

### A.    Burden

Kamiel argues that Kawauchi bears the burden of disproving the validity of service because he had actual notice of the lawsuit before default judgment had been entered. "Normally, a plaintiff has the burden of proving personal jurisdiction in a case where a defendant appears and contests jurisdiction." *"R" Best Produce*, 540 F.3d at 126. But the Second Circuit

4

has held that, where a defendant had actual notice of the lawsuit, the burden shifts to the defendant to prove that they had *not* been properly served. *Id.*

The Court cannot so conclude. Kawauchi denies having been on notice of the lawsuit until funds had been garnished from his bank account. Dkt. 52-9 ¶ 11. In response, Kamiel states that her counsel sent Kawauchi a letter threatening litigation in March of 2019—months before Kamiel filed this lawsuit—that put Kawauchi on notice of the action. But threat of a potential lawsuit is not notice that an actual lawsuit has been filed. And the documentary submissions before the Court call into question whether Kawauchi received even *that* letter. *See* Dkts. 71-1 (U.S. Postal Service ("USPS") receipt of purported letter threatening litigation, dated August 23, *2021*, and listing a "carrier acceptance date" of June 18, *2021*); 72-2 (screenshot of USPS tracking website indicating that package had not been received or delivered by USPS). The Court therefore cannot find that Kawauchi had actual notice of this lawsuit before default judgment had been entered. Thus, the *"R" Best Produce* exception does not apply, and the burden rests with Kamiel to prove that Kawauchi was validly served. *See Vega*, 2021 WL 738693, at *4 n.7; *see also Reefer Tek LLC v. El Dorado Trailer Leasing, LLC*, 17 Civ. 1809 (ER), 2019 WL 5727315, at *4 (S.D.N.Y. Nov. 5, 2019) (citing *Grady v. Grady*, No. 10 Civ. 8809 (CS), 2015 WL 5052663, at *1 (S.D.N.Y. Aug. 26, 2015)).

### B.    Service Under New York Law

Federal Rule of Civil Procedure 4(e)(1) allows for service pursuant to the procedures allowed by state law in the state in which the district court is located. New York state law, in relevant part, authorizes service "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business" and mailing the same there. N.Y. C.P.L.R. § 308(2). New York law defines"[a]ctual place of business" as "any location that the

defendant, through regular solicitation or advertisement, has held out as its place of business."
*Id.* § 308(6).

"No definitive test has emerged as to the meaning of actual place of business." *Ascencio-Sutphen v. McDonald's Corp*, 838 N.Y.S.2d 403, 406 (Sup. Ct. 2007) (quotation omitted). Instead, the caselaw "demonstrates that whether service has been made at one's 'actual place of business' is a fact-and circumstance-specific inquiry." *Leung v. New York Univ.*, No. 08 Civ. 5150 (GBD), 2016 WL 1084141, at *6 (S.D.N.Y. Mar. 17, 2016).  The inquiry is designed to test whether there is a "sufficient relationship" between the employer and defendant "that would create a duty, obligation or reasonable reliance that redelivery [of service from the employer to the defendant] would occur." *Id.* (quoting *Ascencio-Sutphen*, 838 N.Y.S.2d at 407). Accordingly, if Kawauchi had not in fact worked at Hai Street at the time Kamiel's process server delivered and mailed the summons there, he would not have been properly served under New York law. *See Samaan v. City of New York*, 18 Civ. 9221 (VM), 2020 WL 3073292, at *3 (S.D.N.Y. June 10, 2020) ("The strongest ground for dismissal . . . is that neither [individual defendant was] employed . . . where [plaintiff] served process, such that [plaintiff] did not serve those particular defendants at their 'actual place of business.'"); *Glasser v. Keller*, 567 N.Y.S.2d 981, 982 (Sup. Ct. 1991) ("[S]ervice is invalid if the delivery is made at a place where the defendant maintained his place of business in the past, but does not do so at the time of service."); *Leung*, 2016 WL 1084141, at *5–8 (reviewing cases).

"In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [a court] presume[s] that [the defendant] was properly served with the complaint." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (citing *Nyctl 1997-1 Trust v. Nillas*, 732

N.Y.S.2d 872, 873 (App. Div. 2001)).  For that reason, the Court's entry of default judgment against Kawauchi had been predicated upon the unrebutted assumption, established by the process server's attestation, that Kawauchi had been properly served at his place of business. However, "[a] defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit." *Old Republic*, 301 F.3d at 57. Kawauchi has submitted just that. *See* Dkt. 52-9.

Kawauchi proffers that he was not employed by Hai Street when Kamiel attempted to serve him there on June 27, 2019, as his employment with Sakura (Hai Street's owner) had ended more than two months earlier, in April 2019.  *See id.* ¶¶ 3, 7 ("My employment with Sakura Dining ended on April 19, 2019. . . . I did not receive the summons and complaint from anyone at Sakura Dining, Hai Street, or persons at the 230 Park Avenue address and no one informed me that they received the summons and complaint.").  In support of that contention, Kawauchi has submitted compelling documentary evidence, indicating that at the time, he was unemployed: a printout from the Pennsylvania Office of Unemployment Compensation showing an unemployment benefit claim with an effective date of May 26, 2019; an email from the Pennsylvania Department of Labor & Industry, dated June 12, 2019, advising that Kawauchi's unemployment benefits had been accepted for the weeks ending on June 1 and June 8, 2019; bank statements showing that Kawauchi's first unemployment benefits had been deposited into his account on June 14, 2019; and bank statements showing that his last payment from Sakura had been deposited into his account on April 25, 2019.  *See* Dkt. 70, Ex. B.  These documents provide strong evidence that Kawauchi was not employed at Hai Street or Sakura—or indeed anywhere —as of June 27, 2019.

Kamiel responds with relatively weak evidence that Kawauchi was employed at Hai Street or Sakura on June 27, 2019. First, Kamiel points to a screenshot of Kawauchi's LinkedIn profile, which lists his dates of employment as president of Sakura as "May 2016–Jan 2020." Dkt. 56-3. Kawauchi retorts that the identified "Jan 2020" terminal point of his tenure as Sakura's president is a typographical error. Dkt. 61. The Court credits Kawauchi's explanation as likely true. The documentary evidence is clear that Kawauchi had, in fact, been unemployed for the relevant portion of the period that his LinkedIn identified him as working for Sakura. It is more plausible that Kawauchi either overlooked and neglected to correct an error on this social media profile (or that he chose to project on social media that he was employed, when he was not) than that he received state unemployment benefits despite being gainfully employed.

Second, Kamiel notes that Kawauchi was responsible for "winding down" Sakura, whose owner decided to "pull the plug on the business," at the time she attempted to serve him— suggesting that he still worked for Sakura or Hai Street at the time of the attempted service. *See* Dkt. 70-1 at 21. In support, Kamiel relies on a June 4, 2019 email in which Kawauchi states, "Stores have all closed since 4/15. Cleaning up here." Dkt. 71-4. But that email is vague, as it is unclear what "[c]leaning up" means or where "here" is. It also does not establish Kawauchi's continuing presence at the Hai Street address on the relevant date, which was three weeks after this email.

Finally, Kamiel faults Kawauchi for not notifying Kamiel or the New York Department of State that he was no longer employed by Sakura, or providing "proof of sale" of the business to another. *See* Dkt. 71 at 2. But Kamiel offers no reason why Kawauchi—the former president, but never the owner, of Sakura—was obliged to do so. *See* Kawauchi Depo. at 12–13. Nor does

she explain how Kawauchi's not having taken this action supports that Kawauchi had been served at his "actual place of business" on June 27, 2019.

In sum, Court finds that Kamiel has failed to meet her burden of showing that Kawauchi was served at his "actual place of business." Accordingly, the Court holds that Kamiel's June 27, 2019 service upon Kawauchi was invalid, and that vacatur is warranted.

The Court grants Kawauchi's motion to vacate default judgment entered against him. *See Samaan*, 2020 WL 3073292, at *3 ("The strongest ground for dismissal . . . is that neither [individual defendant was] employed . . . where [plaintiff] served process, such that [plaintiff] did not serve those particular defendants at their 'actual place of business.'"); *Glasser*, 567 N.Y.S.2d at 982 ("[S]ervice is invalid if the delivery is made a place where the defendant maintained his place of business in the past, but does not do so at the time of service.").

The Court also orders the return of the funds collected from Kawauchi's bank accounts pursuant to the now-vacated April 24, 2020 default judgment. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 145 (2d Cir. 2019) ("[T]he baseline rule in this Circuit is that 'a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby.'") (quoting *LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999)). For avoidance of doubt, any restraints on Kawauchi's bank accounts in accordance with the now-vacated default judgment shall be lifted, and all enforcement efforts against Kawauchi attendant to that judgment shall cease and desist.

### III.     Litigation of This Case Going Forward

#### A.     Timeframe to Serve

Because the timeframe within which Kamiel had to serve Kawauchi has long passed, *see* Fed. R. Civ. P. 4(m), Kamiel seeks additional time to properly serve Kawauchi.  To be so entitled, Kamiel must show good cause under Rule 4(m).  "In order to establish good cause [under Rule 4(m)] for failure to effect service in a timely manner, a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Russo v. Estee Lauder Corp.*, No. 08 Civ. 3965, 2010 WL 11629552, at *4 (E.D.N.Y. July 27, 2010) (citing *Spinale v. United States*, No. 03 Civ. 1704 (JCF), 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005)).  "[C]ourts in this Circuit generally consider whether: (1) the plaintiff made reasonable efforts to serve the defendant, and (2) the defendant was prejudiced by the delay in service." *Rivera v. Warden of M.C.C.*, No. 95 Civ. 3779 (CSH), 2000 WL 769206, at *4 (S.D.N.Y. June 13, 2000) (quotation omitted).

The Court finds good cause here.  Kamiel's effort to serve Kawauchi was plainly reasonable, as she believed she had done so, and for good reason:  Kawauchi had worked at the location of the attempted service as recently as two months prior; an entity bearing the "Hai Street" name appears to have remained at the 230 Park Ave. address, albeit under new ownership unrelated to Sakura, *see* Kawauchi Depo. at 28–29; Dkt. 15; and Kamiel's process server was expressly told by the recipient of service—a "managing agent"—that Kawauchi still worked there, Dkt. 15. *See Bak v. Berman Enters., Inc.*, No. 91 Civ. 206, 1992 WL 373762, at *4 (E.D.N.Y. Dec. 7, 1992) ("[P]laintiff did attempt to effect service and in fact thought that he had done so.  If he did not, in fact, succeed and was lulled into thinking that no further efforts were required by defendant's inaction, then he has good cause for the lack of success.").  Moreover,

10

Kawauchi has not argued that reopening the case against him would prejudice him. To the contrary, Kawauchi seeks, in the event the Court vacates default judgment but does not dismiss the case, to litigate it on the merits. The Court therefore grants Kamiel's request to extend her deadline to serve.[1] Kamiel shall serve Kawauchi within 30 days of this Order.

### B.    Substitute Service

Kamiel's request to use substitute service upon Kawauchi's counsel's law firm, however, is denied. Substitute service is available only where traditional service is "impracticable," N.Y. C.P.L.R. § 308(5). Kamiel has not made such a showing. Kamiel is aware of a current, valid Oregon address at which she can serve Kawauchi—a fact demonstrated by Kamiel's successful service on Kawauchi, in Oregon, of notice of the default judgment, as well as defense counsel's confirmation of as much. *See* Dkt. 70 at 3 ("[Plaintiff's] counsel has an address for Mr. Kawauchi where service can be effectuated.") (citing Kawauchi Depo. at 6 (stating address for the record)). On these facts, the Court cannot find that service via traditional means is impracticable so as to warrant substitute service.

### C.    Bond

The Court declines to require Kawauchi to post a bond for the full amount of the judgment, plus interest, pending resolution of this case. In arguing for as much, Kamiel notes that taking discovery in this case will be difficult, Dkt. 56 at 5, and asserts, without support, that Kawauchi "has already shown a propensity towards saying whatever he deems necessary to get out of paying," *id.* But Kamiel fails to explain why any of the factors that courts in this District

---

[1] Because the Court affords Kamiel additional time to serve Kawauchi—and because properly doing so would confer personal jurisdiction over him—the Court denies Kawauchi's motion to dismiss the case against him for want of personal jurisdiction, but without prejudice: Should Kamiel fail to properly serve Kawauchi, he is at liberty to renew his motion.

consider when determining whether to require a civil defendant to post bond favor ordering as much here. *See Trombetta v. Novocin*, No. 18 Civ. 993 (RAS), 2020 WL 6365171, at *2 (S.D.N.Y. Oct. 29, 2020) ("Under Local Rule 54.2, factors for the Court to consider in determining whether to impose a bond include: '[1] the financial condition and ability to pay of the party at issue; [2] whether that party is a non-resident or foreign corporation; [3] the merits of the underlying claims; [4] the extent and scope of discovery; [5] the legal costs expected to be incurred; and [6] compliance with past court orders.'") (quoting *Selletti v. Carey*, 173 F.R.D. 96, 100–01 (S.D.N.Y. 1997)) (internal citations omitted). Absent a sufficient factual basis on which to predicate a bond order, the Court declines to impose one. *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515–16 (2d Cir. 2001) ("Not every case will warrant conditioning vacatur on the posting of such a substantial bond. Whether there is justification for such a condition will depend on the circumstances of the case, and it is incumbent on the district court to make findings sufficient to permit appellate review of the condition's reasonableness.").

## CONCLUSION

For the foregoing reasons, Kawauchi's motion is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 53 and to reopen this case as to defendant Kawauchi. Kamiel shall serve Kawauchi no later than June 17, 2022, and file an affidavit on the docket of this case attesting to such service within 7 days of doing so. Kawauchi shall respond within 21 days of his receipt of service.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: May 18, 2022
        New York, New York