UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHERI KAMIEL,

                                Plaintiff,

                  -v-

HAI STREET KITCHEN & CO. LLC, SAKURA DINING
CORPORATION, SUN JOON KIM, *individually*,
DAISUKE KAWAUCHI, *individually*,

                                Defendants.

19 Civ. 5336 (PAE) (SDA)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Sheri Kamiel ("Kamiel") brings claims of employment discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, against Hai Street Kitchen & Co. LLC ("Hai Street"), Sakura Dining Corporation ("Sakura"), Sun Joon Kim ("Kim"), and Daisuke Kawauchi ("Kawauchi") (collectively, "defendants"). Dkt. 5 ("Amended Complaint" or "AC") ¶¶ 1, 72–93. Kamiel also brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), Articles 6 and 9, based on defendants' alleged failure to pay the legally mandated minimum wage and overtime premium. *Id.* ¶¶ 94–106.

    On July 6, 2022, Kawauchi moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss claims against him in Kamiel's Amended Complaint.[1] Dkts. 80, 81 ("Mot.").

---

[1] This Court previously granted a default judgment against all defendants, including Kawauchi. Dkt. 38. In connection with that judgment and the ensuing inquest into damages, $153,561.86

On July 20, 2022, Kamiel opposed the motion to the extent it sought dismissal of her claims under the FLSA, NYSHRL, and NYLL, and requested leave to file a second amended complaint in the event of dismissal. Dkt. 83 ("Opp."). On July 27, 2022, Kawauchi replied. Dkt. 84 ("Reply"). On August 11, 2022, the Honorable Stewart D. Aaron, United States Magistrate Judge, issued a Report and Recommendation (the "Report"), recommending that the motion to dismiss be granted as to Kamiel's claims under the ADA, FLSA, NYCHRL, and NYLL and denied as to her claims under the NYSHRL, and that she be granted leave to amend her claims under the FLSA and NYLL. Dkt. 85 ("Report"). On August 25, 2022, Kawauchi filed objections to portions of the Report sustaining NYSHRL discrimination and retaliation claims against him and granting leave to amend. Dkt. 86 ("Obj."). Kamiel has not objected to any part of the Report, including its recommendations as to the dismissals of the non-NYSHRL claims.

For the following reasons, the Court adopts the Report in its entirety.

## I.  Background

The Court adopts the Report's detailed account of the facts and procedural history. The following summary captures the limited facts necessary for an assessment of the issues presented.[2]

---

was restrained from Kawauchi individually. Dkt. 73 at 1. But Kawauchi claimed that these enforcement efforts were what first put him on notice of the lawsuit, Dkt. 52-9 ¶ 11, and thus moved for vacatur of the default judgment, Dkt. 73 at 1. Finding that Kamiel failed to prove that Kawauchi was served with process at his actual place of business, this Court vacated the default judgment against Kawauchi. Dkt. 73 at 1, 5, 9.

[2] The facts are drawn from the Amended Complaint ("AC"), Dkt. 5. For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Kamiel was employed by Hai Street and its parent company, Sakura. AC ¶¶ 13, 15–16. Kawauchi was president of Hai Street and Sakura. *Id.* ¶ 9. Kim was vice president of Hai Street and Sakura, and Kamiel's direct supervisor. *Id.* ¶¶ 11–12.

Kamiel worked for defendants from on or about October 7, 2017 until her termination on or about September 29, 2018. *Id.* ¶¶ 16, 57. She received "very little real training" for her position, *id.* ¶ 17, and, after she started working, was paid for only some hours she worked, *id.* ¶ 19. For five months, Kamiel spent two to four hours every week, without compensation, traveling to Costco on defendants' behalf to purchase supplies for defendants' Westchester mall restaurant. *Id.* ¶¶ 18, 21. Defendants were aware of Kamiel's off-the-clock work. *Id.* ¶ 25.

In or around May 2018, Kamiel verbally informed Kim of a surgery that she would need in the "near future." *Id.* ¶ 36. On or about August 22, 2018, Kamiel received clearance from her doctor to undergo a hysterectomy due to large fibroids in her reproductive system. *Id.* ¶¶ 37–38. On or about August 27, 2018, Kamiel told Kim that her surgery was scheduled for October 1, 2018. *Id.* ¶ 39. Kamiel informed Kim that the recovery period from this surgery was six to eight weeks, but that she intended to take only four weeks off if the doctor cleared her. *Id.* ¶ 40. Defendants approved this plan. *Id.* ¶ 41. On or about September 11, 2018, Kamiel "officially" requested time off for her surgery via email, and Kawauchi wished her a speedy recovery and asked her to fill out an official request form, which she submitted. *Id.* ¶¶ 45–46.

On or about September 21, 2018, during a visit by the restaurant where Kamiel worked, Kim advised Kamiel "that she was scheduled to work too many hours on the next schedule and to take a day off." *Id.* ¶ 47. Kamiel told Kim she would take September 25, 2018 off "due to a high priority doctor's appointment," to which Kim agreed. *Id.* ¶ 48. However, on September 25, 2018, when Kamiel was en route to her doctor's appointment, she received "threatening emails"

3

from Kim and Kawauchi regarding her schedule. *Id.* ¶ 49. In one, Kim wrote: "If you don't fix the schedule by end of day, you didn't want your job." *Id.* Kawauchi, in turn, emailed that if Kamiel did not fix her schedule, she would lose her job. *Id.* ¶ 51. Kamiel changed her schedule to these specifications. *Id.* ¶¶ 52–53. On or about September 27, 2018, Kim came to the restaurant and "reprimanded" Kamiel about her schedule and a drop-off in restaurant sales. *Id.* ¶ 54. In fact, Kamiel had informed defendants months prior that, because an Apple Store in the same mall was closing for a six-month period, there could be decreased sales. *Id.* ¶¶ 32–33. The Apple Store was one of the mall's main drivers of foot traffic; other shop owners complained of a drop in sales. *Id.* ¶¶ 32, 55. On or about September 29, 2018, the day before Kamiel's disability leave was to commence, Kim terminated Kamiel's employment. *Id.* ¶¶ 58–59.

On June 6, 2019, Kamiel initiated this lawsuit, bringing disability, retaliation, and wage-and-hour claims. With default judgments having been entered as to all other defendants, the sole live claims are those against Kawauchi, as to which the default judgment was vacated. *See supra* note 1.

## II. Applicable Legal Standards

### A. Review of a Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02

4

Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted).

Where the objecting party makes only conclusory or general objections, or simply restates the original arguments, the Court will review the Report and Recommendation for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).

### B. Standards Governing Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014). However, this principle "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. The AC's Discrimination and Retaliation Claims Under the NYSHRL

Kawauchi objects to the Report's recommendation that the claims against him under the NYSHRL for discrimination and retaliation be sustained.

5

### 1. Discrimination Claim

For Kawauchi to be held individually liable under the NYSHRL, Kamiel must plausibly plead a claim of discrimination by her employer, Hai Street and/or Sakura, and that Kawauchi was individually liable for that discrimination. The Report found that the AC viably pled both that Kamiel had been discriminated against based on her disability, *see* Report at 6–10, and that Kawauchi had "actually participate[d]" in that conduct so as to be personally liable, *id*. at 10–12. Kawauchi objects. Obj. 2–8. Having reviewed this issue *de novo*, the Court adopts the Report's recommendation and denies Kawauchi's motion to dismiss, for the following reasons.

To state a *prima facie* case of disability discrimination under the NYSHRL, a complaint must plead that (1) the employer is subject to the NYSHRL; (2) the plaintiff suffers from a disability within the meaning of the NYSHRL; (3) the plaintiff is otherwise qualified to perform their job; and (4) the plaintiff suffered an adverse employment decision because of their disability. *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 405–06 (S.D.N.Y 2007). At the motion to dismiss stage, a complaint need only plead allegations that give rise to a *plausible* inference of unlawful discrimination in violation of the NYSHRL; it need not plead a *prima facie* case. *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

In moving to dismiss, Kawauchi did not dispute that he was subject to the NYSHRL or that Kamiel was disabled within the meaning of NYSHRL. Mot. at 13 & n.6. He argued instead that the AC does not plausibly allege that Kamiel was qualified for her job or a causal connection between her disability and termination. *Id.* at 13–14. The Report found otherwise.

As to Kamiel's qualification for her job, the Report found that the AC plausibly so pled. Report at 7–8. Kawauchi does not now challenge that finding. Applying clear error review, the Court finds none, and thus holds that the AC plausibly pled that she was qualified.

As to the causal connection, the Report found that the AC plausibly pled such between her disability and termination. It noted that Kamiel was fired roughly one month after disclosing her disability to defendants and one day before her disability leave was to commence. *Id.* at 8–10 (citing AC ¶¶ 39, 57–59). Kawauchi objects that temporal proximity alone cannot give rise to a plausible inference of causation, where the complaint alleges that the employer took action against the plaintiff before learning of the disability and does not allege discriminatory conduct towards others or overtly discriminatory comments. Obj. at 2–3. Kawauchi separately argues that Kim knew of Kamiel's disability at least four months earlier, sapping any temporal inference of causation. *Id*. at 3–5. Reviewing the challenge to the causation element *de novo*, the Court agrees with the Report that AC plausibly pleads a causal connection between Kamiel's disability and termination.

As alleged, on August 22, 2018, Kamiel was scheduled for a hysterectomy to take place on October 1, 2018. AC ¶ 37. On August 27, 2018, Kamiel informed Kim of her impending surgery, *id.* ¶ 39, and that she would need to take between four and eight weeks to recover, *id.* ¶ 40. On September 29, 2018, one day before her disability leave was to begin, Kamiel was terminated. *Id.* ¶ 58. As pled, there was thus an approximately five-week gap between Kamiel's disclosure of her disability and her termination. At the pleading stage, that short span permits a plausible inference of causation. *See, e.g.*, *Stryker v. HSBC Secs. (USA)*, No. 16 Civ. 9424 (JGK), 2020 WL 5127461, at *9 (S.D.N.Y. Aug. 31, 2020) ("[A] strong showing of temporal proximity between evidence of a plaintiff's disability and an adverse action can raise an

7

inference of discrimination."); *Devany v. United Parcel Serv., Inc.*, No. 18 Civ. 6684 (PGG), 2021 WL 4481911, at *13 (S.D.N.Y. Sept. 30, 2021) (quoting *Stryker*); *see also Baron v. Adv. Asset & Prop. Mgmt. Sols., LLC*, 15 F. Supp. 3d 274, 283 (E.D.N.Y. 2014) ("[C]ourts in this circuit have held that the temporal proximity of an employee's disclosure of a disability to his termination support[s] an inference of discrimination."); *Trent v. Town of Brookhaven*, 966 F. Supp. 2d 196, 206 (E.D.N.Y. 2013) ("Temporal proximity may be sufficient to show a *prima facie* case."). The case law has generally treated, at the pleading stage, gaps of two months or less—between disclosure of a disability and an adverse action—as plausibly giving rise to an inference of causation in discrimination cases. *Farmer*, 473 F. Supp. 3d at 327 (addressing temporal proximity of disclosure of pregnancy and termination); *see, e.g.*, *Baron*, 15 F. Supp. 3d at 277, 283 (termination within five to six weeks of disclosing disability, along with supervisor's comment regarding disability, supported plausible inference of causation between disability and adverse employment action); *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 22, 27 (D. Conn. 2011) (same, for two-month period); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 253–54, 260 (S.D.N.Y. 2009) (same, for slightly more than one-month period); *cf. Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019) (same, for termination less than a month after disclosure); *Flores v. Buy Baby, Inc.*, 118 F. Supp. 2d 425, 430–31 (S.D.N.Y. 2000) (same, for termination approximately one month after disclosure). The two cases that Kawauchi cites in his objections are not to the contrary. *See* Obj. at 2–3.[3]

---

[3] One states that temporal proximity "alone is not enough to give rise to an inference of discrimination *when gradual adverse job actions began well before the Plaintiff became disabled.*" *Powell v. Merrick Acad. Charter Sch.*, No. 16 Civ. 5315 (NGG) (RLM), 2018 WL 1135551, at *7 (E.D.N.Y. Feb. 28, 2018) (quoting *McDonnell v. Schindler Elevator Corp.*, No. 12 Civ. 4614 (VEC), 2014 WL 3512772, at *5 (S.D.N.Y. July 16, 2014)) (emphasis added). Here, in contrast, the pleadings do not support that Kamiel "was subject to disciplinary action . . . well before she disclosed her disability." *Id.* at *7. The AC alleges that defendants

8

Kawauchi next argues that Kamiel informed defendants of her disability in May 2018, not August 2018, which if true would widen the gap between disclosure and termination to four to five months. *Id.* at 3–4. That characterization is wrong. As pled, in May 2018, Kamiel reported only that she would need to undergo surgery "in the near future." AC ¶ 36. That did not disclose nearly what Kamiel claims she disclosed to defendants on August 27, 2018, which is that she had surgery scheduled soon and would need to take six to eight weeks off to recover. *Id.* ¶¶ 39–40. Indeed, as pled, Kamiel did not even receive clearance to undergo surgery until August 22, 2018. *Id.* ¶ 37. The period between her disclosure of her disability and termination thus is well-pled to have been five weeks—easily short enough under the case law to give rise to an inference of causation.

### 2. Retaliation Claim

The Report found that the AC also stated a claim for retaliation on the grounds that a causal connection was plausibly pled between Kamiel's undertaking a protected activity and her termination. Report at 10 n.8. Kawauchi points to Kamiel's allegation that defendants became hostile toward Kamiel *before* the protected activity took place—in particular, he argues that she alleges defendants became hostile after Kamiel reported a sexual harassment complaint in April 2018, not only after disclosing her need for surgery later that year. On that basis, he argues that

---

"grew unapproachable and hostile," AC ¶ 35, after Kamiel made a sexual harassment allegation in April 2018, *see* Obj. at 3, but that allegation did not reveal her disability, and the adverse conduct allegedly overwhelmingly took place in the five weeks after she had disclosed it, *see* AC ¶¶ 49–58. *Powell* itself acknowledged that allegations of adverse action within a month of disclosure of a disability "are easily close enough to raise an inference of discrimination." *Powell*, 2018 WL 1135551, at *6. In the other case, the termination occurred more than a year after the employee disclosed his disability. It thus did not give rise to a causal inference. *Pattanayak v. Mastercard Inc.*, No. 21 Civ. 2657 (GBD), 2022 WL 564047, at *1–2, *8 (S.D.N.Y. Feb. 24, 2022).

an inference of causation between her protected activity of taking leave and the adverse action of her termination should not arise. Obj. at 5 (citing AC ¶¶ 34–36). On *de novo* review, the Court finds, with the Report, that this claim was well stated.

To state a *prima facie* claim for retaliation under the NYSHRL, a complaint must plead: "[i] participation in a protected activity known to defendant; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 406 (S.D.N.Y. 2017) (quoting *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 413 (S.D.N.Y. 2012)). The AC alleges that defendants knew of her intention to take disability leave for her surgery, in that they explicitly agreed to it, AC ¶¶ 41–42, and Kawauchi "wished her a speedy recovery," *id.* ¶ 44. The AC alleges that Kamiel was, in short order, terminated—termination being the ultimate "employment action disadvantaging the plaintiff," *Gaughan*, 261 F. Supp. 3d at 406. And, for the reasons explained above, given the short passage of time between these events, a plausible inference of causation arises, and indeed is all the more plausible given the allegation that Kamiel was fired the day before her leave was to commence. AC ¶ 59.

Kawauchi's objection seizes on the fact that the AC alleges an earlier, and separate, complaint by Kamiel in April 2018—regarding sexual harassment. After that complaint, the AC alleges, "Defendants['] behavior grew unapproachable and hostile." *Id.* ¶ 35. That argument misconceives the retaliation claim, which is based on Kamiel's protected activity of reporting her disability leave, not reporting sexual harassment in the workplace. That report, as alleged, took place shortly before her termination.

### 3. Kawauchi's Individual Liability

The Report concluded that the AC plausibly alleged Kawauchi's individual liability for the discrimination and retaliation alleged above, as it adequately alleged that he was Kamiel's employer and actually participated in the discriminatory conduct. Report at 11–12. In objecting, Kawauchi disputes these conclusions. Obj. at 6–8.

Reviewing the allegations *de novo*, the Court again adopts the Report's assessment. The NYSHRL "allow[s] for individual defendants who actually participate in discriminatory conduct to be held personally liable for that conduct." *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2022 WL 3100663, at *6 (S.D.N.Y. Aug. 4, 2022). There are "two available theories of liability: where the individual defendant is considered an 'employer,' N.Y. Exec. Law § 296(1), or where the defendant aided and abetted the unlawful discriminatory acts of others, *id.* § 296(6)." *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020).

First, under N.Y. Exec. Law § 296(1), "individual liability may be imposed on an 'employer' who 'actually participates in the conduct giving rise to the discrimination.'"[4] *Deveaux v. Skechers USA*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *3 (S.D.N.Y. Apr. 9, 2020) (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)). "An individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'" *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012); *see also Xiang*, 2020 WL

---

[4] Kawauchi argues that the Report incorrectly used the standard for aiding and abetting liability in addressing this question. *See* Obj. at 8. The proper standard is that of actual participation in the discriminatory or retaliatory conduct. *See, e.g.*, *Harris*, 2022 WL 3100663, at *6; *Deveaux*, 2020 WL 1812741, at *3. The Report applied that standard.

248941, at *5 ("An individual defendant is liable as an 'employer' under § 296(1) when that individual has . . . the power to hire or fire." (citation omitted)).

As alleged, Kawauchi was president of Hai Street and Sakura and "directly supervised [] Kamiel and had authority to terminate her employment." AC ¶¶ 9–10. Kim was Kamiel's direct supervisor, *id.* ¶ 12, approved overtime pay decisions for her and denial of pay for her travels to Costco, *id.* ¶¶ 20, 22, 24, and ultimately fired her, *id.* ¶ 58. Given his capacity as vice president of the company, it is reasonable to infer that Kim reported to Kawauchi. *Id.* ¶ 11. And Kim reprimanded and terminated Kamiel only after Kawauchi, on September 25, 2018, had threatened Kamiel's job. *Id.* ¶¶ 51, 54. Although, as the Report noted, the Amended Complaint "is not a model pleading," Report at 11, these allegations give rise to the plausible inference that Kawauchi had the power to hire and fire, *see Xiang*, 2020 WL 248941, at *5, and was Kamiel's employer.

The AC also plausibly alleged Kawauchi's participation in the termination of Kamiel—the act on which both the discrimination and retaliation claims pivot. It alleges that Kawauchi personally "threaten[ed]" that Kamiel "would lose her job" on the day Kamiel took the day off to go to a doctor's appointment, after defendants ordered that she "fix" her schedule. AC ¶ 51. And Kim is alleged to have fired Kamiel only after Kawauchi's threats, *id.* ¶¶ 54, 58. The AC plausibly alleges that Kawauchi participated in—indeed catalyzed—the discriminatory conduct.

Kawauchi separately argues that the AC does not plausibly allege aiding-and-abetting discrimination. Obj. at 7–8. Having sustained the discrimination claim against Kawauchi on other grounds, the Court does not have occasion to determine whether the claim independently could be sustained on an aiding-and-abetting theory.

  **B.**   **ADA and NYCHRL Claims**

The Report recommends dismissal of the AC's claims under the ADA and NYCHRL. Neither party objects to this recommendation. Report at 6. Indeed, Kamiel has conceded that she does not have a viable claim against Kawauchi under either statute.[5] Opp. at 4. Finding no clear error in the Report's analysis, the Court concludes that these claims should be dismissed.

### C.  FLSA and NYLL Claims Against Kawauchi

The Report recommends dismissing the AC's FLSA and NYLL minimum wage and overtime claims on the ground, *inter alia*, that it does not plead the hours Kamiel worked or her hourly rate. Report at 12–14. As no party has objected to this recommendation, review for clear error is appropriate. Finding none, the Court adopts the recommendation to dismiss these claims.[6]

### D.  Leave to Amend

The Court also adopts the Report's recommendation to grant Kamiel leave to amend her FLSA and NYLL claims. *See* Report at 14. Kawauchi objects, because Federal Rule of Civil

---

[5] The NYCHRL requires alleged discriminatory conduct to have occurred in New York City. N.Y.C. Admin. Code § 2-201. As Kamiel was employed in Westchester, she conceded that she cannot allege claims under NYCHRL. Opp. at 4.

[6] The Report's recommendation that the Court dismiss the AC's FLSA and NYLL claims included the assessment that Kawauchi was not an employer for the purposes of these statutes. These claims fail independently, for the reasons above. The Court, however, finds that the AC adequately pleads employer status under both statutes, as to which the operative inquiry into "economic realities" inquiry is the same. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013); *compare Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (analyzing employer status based on formal control), *with Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71–72 (2d Cir. 2003) (analyzing employer status based on functional control). Although discovery will ultimately resolve these questions, the allegations in the AC, taken together, plead such status, including that company president Kawauchi had the power to hire and fire, in that he threatened Kamiel's job, AC ¶ 51; and that Kim, Kawauchi's vice president and subordinate, terminated Kamiel's employment *after* Kawauchi made that threat. *Id.* ¶ 58. Other allegations support this conclusion, including that Kawauchi's subordinate Kim approved whether Kamiel could receive overtime pay and pay for traveling to and from Costco, *id.* ¶¶ 20, 22, 24; that all defendants approved her disability leave, *id.* ¶ 41; and that Kawauchi advised her to fill out a form to request disability leave, *id.* ¶ 45.

Procedure 7(b) requires that a "request for a court order . . . be made by motion," and a motion to amend under Federal Rule of Civil Procedure 15(a) is subject to the requirements of Rule 7(b). Obj. at 8–9 (quoting Fed. R. Civ. P. 7).  He also asserts that Kamiel failed to state what she would add to her claims, and that amendment without notice would be unjust.  *Id.* at 9.

Rule 15(a)(2) provides that "[c]ourt[s] should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).  Here, Kamiel did not exercise her right, under Rule 15(a)(1)(B), to amend her complaint as a matter of course following the motion to dismiss, and instead sought leave to amend for the first time in her opposition brief.  Opp. at 1, 7–9. Although the Court would not ordinarily allow the filing of an amended complaint in such circumstances, as the Report notes, her affidavit in support of her motion for default judgment contains information supporting her unpaid wage and overtime compensation claims, suggesting that leave to amend would not be futile.  *See* Dkt. 41-1.  The Court thus grants Kamiel leave to file a second amended complaint with respect to her claims under the FLSA and NYLL.

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts the conclusions in Judge Aaron's Report and grants in part and denies in part Kawauchi's motion to dismiss.

The Court accordingly dismisses the AC's claims against Kawauchi under the ADA, the FLSA, the NYCHRL, and the NYLL, denies the motion to dismiss the AC's claims against Kawauchi under the NYSHRL, and grants Kamiel leave to file a second amended complaint with respect to claims against Kawauchi under the FLSA and NYLL.  The Court respectfully directs the Clerk of Court to close the motion pending at docket number 80.

The case remains under the able pretrial supervision of Judge Aaron.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 13, 2023
       New York, New York

15